IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LEE WILLIAMS,<br><br>   Petitioner,<br><br> v.<br><br>ANTHONY J. MALFI, Warden,<br><br>   Respondent.<br>_____ | No. C 06-5825 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(Docket No. 37) |

  On September 22, 2006, petitioner Charles Lee Williams, a California state prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges the constitutional validity of his convictions. In response to the Court's order directing respondent to show cause as to why relief should not be granted, respondent has filed an answer; petitioner has filed a traverse. Having read and considered the parties' respective submissions as well as the underlying record, the Court concludes petitioner is not entitled to relief based on the claims presented and, accordingly, will deny the petition.

**PROCEDURAL BACKGROUND**

  In 2003, in Alameda County Superior Court, a jury found petitioner guilty of eight counts of second degree robbery, Cal. Pen. Code § 211, each with an enhancement for personal use of a firearm, id. §§ 12022.5(a)(1) & 12022.53(b), and two counts of possession of a firearm by a felon, id. § 12021(a)(1). Following the verdict, petitioner admitted two prior "strike" convictions. The trial court sentenced petitioner to a term of forty-nine years in

prison. Petitioner appealed.[1] The California Court of Appeal for the First Appellate District affirmed the judgment (Ans. Ex. 1 at 1) and the California Supreme Court denied petitioner's petition for review (Ans. Ex. 2).

**FACTUAL BACKGROUND**

Evidence presented at trial showed that on July 30, 2002, Williams, armed with a nail gun, robbed a beautician's shop and its customers, and that on August 7, 2002, Williams, armed with a handgun and accompanied by his co-defendant, Jeremy Smiley, robbed another beautician's shop and its customers. (Ans. Ex. 1 at 2–3.).

**DISCUSSION**

As grounds for federal habeas relief, petitioner alleges the trial court (1) violated his right to due process by denying his request to be tried separately from his co-defendant, Smiley; (2) violated his right to due process by excluding evidence regarding third-party culpability; (3) violated his right to due process by admitting eyewitness evidence where the eyewitness identification procedure was defective; and (4) violated his right to a jury trial by imposing an aggravated sentence.

A.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

---

[1] Petitioner states he also filed, in the Alameda County Superior Court, a motion to vacate the judgment, and that he never received a response. (Pet. at 4.)

28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412–13 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Penry v. Johnson</u>, 532 U.S. 782, 796 (2001).

The state court decision implicated by § 2254(d) is the "last reasoned decision" of the state court. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803–04 (1991); <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091–92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court looks to the last reasoned state court opinion, which, in this instance, is the decision of the California Court of Appeal on direct review of petitioner's conviction. See <u>Nunnemaker</u>, 501 U.S. at 801–06; <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

B.  <u>Petitioner's Claims</u>

   1.  <u>Denial of Motion to Sever</u>

Petitioner claims the trial court violated his right to due process and a fair trial when it denied his motions to sever his trial from that of his co-defendant, Smiley. Petitioner alleges that if there had been two separate trials, petitioner could have called Smiley to testify at petitioner's trial to provide "exonerating testimony." The state appellate court rejected petitioner's claim, finding the trial court had "no assurance that Smiley would testify, or that any purported exoneration of Williams was bona fide." (Ans. Ex. 1 at 7.) The state appellate court also rejected petitioner's claim that the denial violated his rights under <u>Bruton v. U.S.</u>, 391 U.S. 123 (1968).

The record reviewed by the state court reflects the following: Petitioner made several motions to sever his trial from Smiley's. Petitioner's first motion to sever was based on concerns not raised herein. In his second motion, petitioner stated that Smiley was willing to provide exculpatory testimony. At the hearing on the motion, however, petitioner's trial counsel informed the trial court that, in the interim, he had learned that Smiley's counsel would not permit Smiley to testify. The trial court denied petitioner's motion on the ground

3

petitioner had not made a sufficient showing that Smiley would in fact testify if called.  In his third motion, petitioner based his argument on a letter to the trial court from Smiley, in which Smiley named as the robber another man, Darnell, who was in custody with Smiley.  Additionally, at the hearing on the third motion, Smiley told the trial court that Darnell had threatened his family if he told the court that Darnell was the actual robber. The trial court, however, had received several other letters from Smiley, which included statements that Smiley was an innocent bystander, that he was willing to testify against petitioner in exchange for a sentence of time served, and that a person other than petitioner and Smiley had committed the robberies.  Petitioner made no offer of proof as to the content of Smiley's proposed testimony or that he would in fact testify if the trials were severed.  The trial court denied petitioner's third motion on the ground that Smiley's reasons for offering to testify kept changing; in so ruling, the trial court further found that Smiley's letters indicated Smiley "would offer to testify in whatever manner he seemed to think would secure a better result for [ ] himself."  (Ans. Ex. 1 at 8.)  Lastly, at trial, at the close of the prosecution's case and without further elaboration, petitioner joined in a renewed motion to sever made on behalf of Smiley, which motion was denied.

A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997).  It also may result in the deprivation of the specific constitutional guarantee of the right of confrontation. Herd v. Kincheloe, 800 F.2d 1526, 1529 (9th Cir. 1986).

A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials. Grisby, 130 F.3d at 370. Nor is it concerned with the procedural right to severance afforded in federal trials. Id. Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. To prevail, therefore, the petitioner must demonstrate that the state court's denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. Id.  In addition, the impermissible joinder must have had a substantial and injurious effect or

4

influence in determining the jury's verdict.  <u>Sandoval v. Calderon</u>, 241 F.3d 765, 772 (9th Cir. 2000).

Here, petitioner has not shown he was prejudiced by the trial court's denial of his motion to sever, nor that it had a substantial and injurious effect on the jury's verdict. Petitioner does not claim he suffered any adverse consequences other than the loss of an assertedly exculpatory witness.  Petitioner failed, however, to provide sufficient evidence to justify granting his motions to sever, given Smiley's ever-changing offers to testify both for and against Williams.  On this record, the Court cannot say the trial court's denial was either unreasonable or resulted in prejudice to petitioner.

Petitioner's <u>Bruton</u> claim likewise is without merit.  Under <u>Bruton</u>, a criminal defendant is deprived of his Sixth Amendment right of confrontation when an incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant.  391 U.S. at 134–135.

In the instant matter, Smiley's unprompted statements to the police, all of which were made directly after his arrest, were: "Officer, the other guy that was with me, did you guys catch him too?" and "You ain't got nothing on me.  There was only one gun; there was only one gun."  (Ans. Ex. 1 at 10.)  These statements do not qualify as an incriminating confession.  Smiley's "the other guy" could refer to anyone; petitioner's name was not mentioned, and the statement contained nothing that would otherwise identify petitioner.

The Supreme Court's holding in <u>Gray v. Maryland</u>, 523 U.S. 185 (1998) is particularly instructive in this instance.  In <u>Gray</u>, a co-defendant was asked by the police, "Who was in the group that beat Stacey?"  The co-defendant's redacted answer, as introduced at trial, was, "Me, deleted, deleted, and a few other guys," with the "deleted"s substituting for the co-defendants' names.  The Supreme Court found the co-defendant's announcement that a name had been redacted, sufficiently incriminated the defendant as to fall within <u>Bruton</u>'s prohibition against the use of jointly-incriminating statements.  As an acceptable alternative, however, the Supreme Court proposed "Me and a few other guys."  <u>Id.</u> at 196.

Because the statement at issue in the instant petition contains no announced deletions,

1 and is not otherwise facially incriminatory, the Court concludes that no <u>Bruton</u> violation
2 occurred.

3 Moreover, even if a <u>Bruton</u> violation did occur, the error was harmless. An error will
4 be found harmless unless it "had substantial and injurious effect or influence in determining
5 the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 ( 1993). Here, considerable
6 and credible evidence was presented at trial that directly implicated petitioner in both
7 robberies, including the testimony of eyewitnesses who unequivocally identified petitioner as
8 the person who committed the crimes. Further, with respect to the second robbery, i.e., the
9 robbery committed with Smiley, petitioner, who was arrested shortly thereafter near the scene
10 of the crime because he matched the description of one of the robbers, was found to have in
11 his possession multiple items of jewelry belonging to two of the salon's customers. Given the
12 prosecution's strong case against petitioner, the Court concludes that any error in admitting
13 Smiley's statement, if indeed there was an error, did not have a substantial or injurious effect
14 or influence on the jury's verdict.

15 Accordingly, petitioner is not entitled to habeas relief on this claim.

16     2. <u>Exclusion of Evidence</u>

17 Petitioner claims the trial court violated his constitutional rights by refusing to admit
18 evidence of third-party culpability, specifically, Smiley's letter stating Darnell committed the
19 robbery. (Pet. at 21.) The trial court excluded the evidence on the ground there was no
20 evidentiary basis on which such evidence could be admitted. The state appellate court found
21 the trial court's exclusion of the evidence was proper in that its probative value was minimal
22 and was outweighed by the undue consumption of time its admission would have required.
23 (Ans. Ex. 1 at 12–14.)

24 "State and federal rulemakers have broad latitude under the Constitution to establish
25 rules excluding evidence from criminal trials." <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324
26 (2006) (internal quotation and citation omitted); <u>see</u> <u>also</u> <u>Montana v. Egelhoff</u>, 518 U.S. 37,
27 42 (1996) (holding due process does not guarantee right to present all relevant evidence).
28 This latitude is limited, however, by a defendant's constitutional rights to due process and to

6

present a defense, rights originating in the Sixth and Fourteenth Amendments. See Holmes, 547 U.S. at 324.  In particular, "the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote"[;] however, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 325–26; see Egelhoff, 518 U.S. at 42 (holding exclusion of evidence does not violate Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.").

In deciding if the exclusion of evidence violates the due process right to a fair trial or to present a defense, the court balances the following five factors:  (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004) (citing Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000) (same).  The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based.  See Chia, 360 F.3d at 1006; Miller, 757 F.2d 988, 995 (9th Cir. 1985).

Here, having weighed the applicable factors and considerations, the Court concludes the record supports the state court's determination.  Not only was the letter hearsay, it was wholly uncorroborated and the circumstances under which it was written provided no indicia of reliability.  Indeed, Smiley's repeated offers to aid the prosecution in order to secure a beneficial plea agreement called into serious question his credibility.  Under such circumstances, the remaining factors do not serve to outweigh the significant lack of probative value and reliability.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### 3. Admission of Eyewitness Evidence

Petitioner claims the trial court violated his due process rights by admitting

7

eyewitness evidence that had resulted from a defective eyewitness identification procedure. (Pet. at 25–26.) In particular, petitioner contends the police tainted the identification made by Jessica V., who witnessed the robbery petitioner was charged with committing without an accomplice. The robber seen by Jessica V. was wearing a bandanna over the lower part of his face. During the identification procedure, the police instructed the eyewitnesses to mark an "X" next to the number of the person who the witness was sure committed the robbery, a question mark next to the number of the person if the witness was not sure he was the robber, and to place no mark if the person was not present. According to petitioner, Jessica would have placed a question mark next to petitioner's number, "until she went into a back room, and a police officer told her to put an "X" on the card if she saw the man who had come into the shop with the gun"; petitioner also claims that "[a]t trial, Jessica testified that she had some uncertainty when she marked petitioner's number with an "X." (Id. at 25–26.) Petitioner contends the police officer's "directing Jessica to put an "X" on the form when she was unsure of her identification, made the identification constitutionally inadmissible as a matter of law." (Pet. at 26.)

> The Court of Appeal described Jessica's testimony as follows:
>
> Jessica stated that she watched the lineup carefully and obeyed the instruction to not mark her card until the process was completed. The police instructed her to place an "X" by the person's picture if she recognized him, but to place a question mark by his picture if she was unsure. She was careful and did not want to make a mistake. At first she thought she might put a question mark by [petitioner], but because the police said to use an "X" if she was sure of the identification, she marked an "X."
>
> When Jessica was cross-examined about her identification of [petitioner], she repeatedly stated that she was certain he was the robber. She repeatedly denied the suggestion that the police told her to place an "X" by [petitioner] and repeatedly testified that they told her to place an "X" by the person only if she was certain. She reaffirmed her certainty in court that [petitioner] was the robber.

(Ans. Ex. 1 at 14–15.) The state appellate court's reading of the facts is supported by the trial transcript (Ans. Ex. 3, Part 5 at 176–78), and petitioner has failed to point to any evidence to support his contention that the police improperly influenced Jessica's identification. In short, because there has been no showing the identification was tainted, its

8

1 admission by the trial court was not error, let alone error rising to the level of a constitutional
2 violation.

3      Accordingly, petitioner is not entitled to habeas relief on this claim.

### 4. Imposition of Sentence

Petitioner claims the trial court's imposition of the upper term of imprisonment on count one violated his right to a jury trial as that right is described in <u>Blakely v. Washington</u>, 542 U. S. 296 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). The state appellate court rejected this claim, finding the sentence was supported by aggravating factors that fell within the <u>Apprendi</u> exception. (Ans. Ex. 1 at 16.)

The trial court imposed the upper term of five years for the second degree robbery charged in count one. The trial court based its selection of this term on petitioner's prior convictions of increasing seriousness, his prior prison term, and his poor performance on parole. (Ans. Ex. 1 at 15.)

In <u>Apprendi</u>, the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490. The "statutory maximum" discussed in <u>Apprendi</u> is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; in other words, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather the maximum he could impose without any additional findings. <u>Blakely</u>, 542 U. S. at 303–04. In California, the middle term is deemed the statutory maximum, and thus the imposition of the upper term can implicate a criminal defendant's <u>Apprendi</u> rights. See <u>Cunningham v. California</u>, 549 U.S. 270, 293 (2007).

A single aggravating factor is sufficient to authorize a California trial court to impose the upper term. <u>People v. Osband</u>, 13 Cal. 4th 622, 728 (Cal. 1996). Moreover, recidivism and prior convictions increasing the maximum penalty need not be charged to comport with the constitutional right to fair notice because they are not considered an element of the offense charged. See <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 243-44 (1998);

9

United States v. Pacheco-Zepeda, 234 F.3d 411, 414-15 (9th Cir. 2001), cert. denied, 532 U.S. 966 (2001) (holding Almendarez-Torres remains good law after Apprendi and provides that prior convictions, whether or not admitted by defendant, constitute sentencing factors rather than elements of crime).

Here, given the trial court's stated reasons for its sentencing choice, the Court concludes petitioner's claim lacks merit. In particular, the aggravating circumstances found by the trial court fall within the Almendarez-Torres recidivism exception, and, consequently, petitioner's Apprendi rights are not implicated.

Accordingly, petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the Court concludes that the California Court of Appeal did not render a decision that was contrary to, or constituted an unreasonable application of, clearly established federal law, or that entailed an unreasonable determination of the facts.

Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

Petitioner's motion for discovery and for the appointment of counsel (Docket No. 37) is DENIED as moot.

The Clerk shall enter judgment, terminate all pending motions, and close the file.

**IT IS SO ORDERED.**

DATED: August 25, 2009

MAXINE M. CHESNEY
United States District Judge